UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:20-cv-11486-GAO

VIVIAN TSENG, BRADLEY IRWIN, LISA FLYNN, ROBERT MCMILLEN, DANIEL DILLON, DAVID LUKIEWSKI, ANDREW STANIAR, WILLIAM HEWINS, THOMAS CALLAHAN, MAURA WRIGHT, PAULA WILLIAMS, JUDITH GETTIG, and JUDY CARR,
Plaintiffs,

v.

WELCH FOODS INC., A COOPERATIVE, and THE PENSION RESTORATION PLAN COMMITTEE OF WELCH FOODS INC.,
Defendants.

OPINION AND ORDER
October 17, 2023

O'TOOLE, D.J.

This suit arises from an allegedly impermissible alteration of Welch Foods Inc.'s ("Welch") Pension Restoration Plan (the "Plan"). The Plan is a so-called "top-hat" retirement benefits plan for certain Welch executives selected by the company's board of directors. The Plan was established by Welch and is administered by the company's Pension Restoration Plan Committee (the "PRP Committee").

In August 2019, Welch reduced the Plan's benefit accrual interest rate from 9.5 percent, which had been the interest rate since the Plan's inception in 1997, to 4 percent. The change in interest rate consequently diluted the annual benefits provided under the Plan. In some circumstances, the rate change might cause a participant's retirement account to be exhausted earlier than anticipated when the prior rate prevailed. The plaintiffs challenged the interest rate change through an available administrative appeals process. During that process, the PRP Committee, as the Plan Administrator, upheld the interest rate change, and the plaintiffs thereafter

commenced this action under the Employee Retirement Income Security Act ("ERISA") § 502(a)(1)(B), claiming that the change resulted in an unlawful denial of benefits. The plaintiffs contend that the reduction of the interest rate violated the terms of the Plan—which they assert is a "lifetime benefit" plan—and ask this Court to overturn the interest rate change and enforce the terms of the Plan as originally established. Pending are the parties' cross-motions for summary judgment (dkt. nos. 79 & 83).

A "top-hat" plan is an unfunded plan for the benefit of a select group of highly compensated management executives. Under the Plan, each participant has a "Target Benefit" that is individually calculated based on the participant's age and salary.

Sections 2.02 and 2.03 of the Plan describe how the Target Benefit is calculated. (Administrative R. at 1 § 2.02, 2.03 (dkt. no. 43-1).) Section 2.04 of the Plan describes the manner in which the participants' accounts are managed. Each participant's account is (i) determined as of the participant's retirement date in accordance with Sections 2.04(a) and 2.04(b), (ii) credited with interest after retirement in accordance with Section 2.04(c), and (iii) reduced by benefit payments made in accordance with Section 2.04(d). (Id. § 2.04.) Specifically, Section 2.04(c) provides:

> Each Plan Year prior to full payment of the Participant's Target Benefit, or if earlier, the date on which the Participant's Account is reduced to zero, the Participant's Account will be increased annually by an interest credit. The interest credit will be calculated on a Participant's Account using an interest rate as determined annually by the Plan Administrator with assistance of the Actuary.

(Id.)

Section 2.06 of the Plan further provides that benefit payments will stop when a participant's account balance is zero:

> Notwithstanding any other provision of this Plan, in no event will the amount of any payment made to a Participant exceed the amount credited to the Participant's

> Account as determined under Section 2.04. In the event that a Participant's Account is reduced to zero, the Participant will not be entitled to any further benefits under this Plan.

(Id. § 2.06.)

The parties disagree as to the applicable standard of review for the present summary judgment motions. The Court agrees with the defendants that the arbitrary and capricious standard of review applies because the Plan grants the administrator discretion to interpret the Plan. (See Order, July 6, 2023 (dkt. no. 75) (quoting Niebauer v. Crane & Co., 783 F.3d 914, 923 (1st Cir. 2015)); see also Vendura v. Boxer, 845 F.3d 477, 482 (1st Cir. 2017) (noting the arbitrary and capricious standard is "functionally equivalent to the abuse of discretion standard").)

The resolution of this issue essentially resolves the parties' dispute. Section 2.04(c) explicitly authorizes an annual review of the interest rate to be applied:

> The interest credit will be calculated on a Participant's Account using an interest rate as determined annually by the Plan Administrator with assistance of the Actuary.

(Administrative R. at 1 § 2.04(c).)

The fact that the rate was not adjusted for many years does not establish that the rate could not, under the Plan documents, ever be adjusted. The Plan plainly provides otherwise. Adjusting the annual accrual to a more conservative 4 percent, though disadvantageous to the participants, was a decision plainly authorized by the explicit language of the Plan.

The PRP Committee did not abuse its discretion by relying on the unambiguous terms of the Plan in altering the interest rate of the Plan. Accordingly, the Court grants the defendants' motion for summary judgment on Count I.

In Count II of the complaint, the plaintiffs plead an estoppel argument in the alternative. The First Circuit has stated that it has "not yet had occasion" to recognize equitable estoppel claims

under ERISA § 502(a)(3)(B). Guerra-Delgado v. Popular, Inc., 774 F.3d 776, 782 (1st Cir. 2014). In this case, however, there is no reason to consider whether the Plan Administrator should be estopped from doing what the Plan explicitly authorized. Accordingly, the Court grants the defendants' motion for summary judgment as to Count II as well.

For the foregoing reasons, the defendants' motion for summary judgment (dkt. no. 79) is GRANTED. Correspondingly, the plaintiffs' motion for summary judgment (dkt. no. 83) is DENIED. Judgment shall enter in favor of the defendants.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge